# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PAOLO S. RIBAUDO,        )
                                )
        Plaintiff,        )    **Case No. 04 C 2810**
                                )
        v.                )    **Magistrate Judge Morton Denlow**
                                )
JO ANNE B. BARNHART,      )
Commissioner of Social Security,   )
                                )
        Defendant.     )

## MEMORANDUM OPINION AND ORDER

Plaintiff Paolo S. Ribaudo ("Claimant" or "Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security, Jo Anne B. Barnhart ("Defendant" or "Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. Plaintiff claims that the Commissioner's decision to deny his benefits should be reversed because the Administrative Law Judge ("ALJ"): 1) wrongly determined under Step 3 that the Claimant's ailments did not meet a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1; 2) wrongly determined under Step 4 that the Claimant's residual functional capacity was "light" work; and 3) wrongly determined that the Claimant was not credible. This case comes to the Court on cross-motions for summary judgment. For the reasons stated herein, this Court denies Plaintiff's motion for summary judgment, grants the Commissioner's motion for summary judgment, and affirms the decision of the Commissioner to deny Plaintiff's application for benefits.

# I. BACKGROUND FACTS

## A. PROCEDURAL HISTORY

Claimant filed an application for DIB on July 14, 2000, alleging that he was disabled due to lower back pain. R. 85-87, 111. The application was denied by letter dated November 17, 2000. R. 62. Claimant's request for consideration was filed on January 18, 2001, R. 66, and reconsideration was denied on May 11, 2001. R. 67. On June 25, 2001, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). R. 70. This hearing was held on October 3, 2003 before the Honorable Richard J. Boyle. R. 29-59. The Claimant was present and testified through an Italian interpreter. R. 35-52. In addition, a vocational expert testified. R. 53-8. Claimant was represented by counsel. Judge Boyle rendered an unfavorable decision on December 19, 2003. R. 10-18.

Claimant requested a review of the ALJ's decision on January 28, 2004. R. 8. The Appeals Council declined to accept jurisdiction by letter dated March 18, 2004, making the hearing decision the final decision of the Commissioner. R. 5; 20 C.F.R. §§ 404.955, 404.981. Because Claimant had exhausted all of his administrative remedies, this case became ripe for judicial review under 42 U.S.C. § 405(g). A complaint was filed before the Court on April 19, 2004. Pursuant to 28 U.S.C. 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a Magistrate Judge.

## B. HEARING TESTIMONY - OCTOBER 3, 2003

### 1. Claimant's Hearing Testimony

Paolo Ribaudo was born on February 15, 1973; he was 30 years old at the time of the ALJ hearing. R. 32, 85. He is married and currently lives with his wife in Sicily. R. 35. Claimant came to the United States in 1995, when he was 22 years old, and worked as a construction worker. R. 35, 103. He did not become a U.S. citizen but lived in the United States as a legal alien. R. 32. Approximately 18 months before the ALJ hearing, Claimant moved back to Sicily with his wife and two children in order to take advantage of Sicily's free medical services. R. 32, 36.

Claimant worked in the United States as a construction laborer of street sewers from 1995 until November, 1998, when he sustained a work-related injury to his back. R. 38-39, 103. Claimant's job required standing or walking for eight hours a day, and lifting approximately 80 to 110 pounds. R. 38, 103. In November of 1998, Claimant injured his back, between the L4 and L5 vertebrae, while lifting a sewer pipe. R. 39. He underwent surgery for this injury in March of 1999. *Id.*

Since his injury, Claimant continues to experience back problems. *Id.* He has a decrease in strength in his right leg, and his right foot is always numb. *Id.* He experiences a stabbing pain in his lower back that radiates down his right leg. R. 40. He describes the pain as alternating between "mildly severe" and "severe". R. 41. He must sometimes lay down during the day because of the pain. R. 41. He does not take any medication besides

3

Tylenol. R. 42.

Claimant's ability to walk is limited; he is able to walk one block and sometimes has trouble climbing stairs. R. 45. He often needs his wife's help to climb up the stairs and to get dressed. *Id.* He is able to lift about 10 to 15 pounds but cannot carry that weight for an extended period of time. R. 45, 50.

## 2. Vocational Expert, James Breen's Testimony

Vocational expert ("VE") James Breen, testified that Plaintiff had unskilled past relevant work experience as a construction laborer, which required very heavy exertion. R. 53. The VE was asked to consider jobs that accommodated Claimant's vocational profile of age, education, and work experience, with a residual functional capacity ("RFC") of light work activity that allowed him to sit or stand at will. *Id.* The VE identified approximately 37,250 jobs that accommodated these limitations, including work as a bench assembler. R. 53, 55. He also identified 23,000 sedentary jobs that allowed a sit-stand option, such as plastic toy production jobs. R. 54. All of these jobs were categorized as unskilled. R. 55.

## C. MEDICAL EVIDENCE

The medical evidence consists of records from Plaintiff's treating physicians, Dr. Jay L. Levin and Dr. Spiros Stamelos; a report from an evaluation by Dr. Ibrahim S. Sadek, a state appointed physician for the Illinois Department of Disability Determination Services ("DDS"); another report from a state appointed physician, Dr. Virgilio Pilapil; an evaluation of the Plaintiff's functional capacity done by Paul Plinske and Lynne Fuglsang-Haram for

4

HealthSouth Rehabilitation Center of Central DuPage; a report from a private consultation with Dr. Jit Kim Lim; and an x-ray and short report (in Italian) from Claimant's Italian doctor.

### 1. Dr. Jay L. Levin - Orthopedic Surgeon - Treating Surgeon

Dr. Levin diagnosed Claimant with a herniated disc at L4-5. R. 139-41. Claimant was treated conservatively for several months, which failed to relieve his symptoms. R. 139-41. In March 1999, Dr. Levin performed surgery on Plaintiff's back. R. 145. One week after the surgery, Dr. Levin reported that Plaintiff had no sciatic notch tenderness, pain on straight leg raising, but did have some residual discomfort with numbness in the right leg. R. 168.

In May, 1999, post myelogram CT scans of Plaintiff's lower back showed a moderate-size bulging of the disc at L4-5. R. 148. Dr. Levin also evaluated the Plaintiff in May of 1999 and noted that in physical therapy, the Plaintiff had "slowly improved". R. 165. However, he also noted that the Plaintiff still had pain down his right thigh, right foot numbness, occasional left leg pain, and severe headaches and dizziness. *Id.* Prescription pain medicine like "Celebrex" and "Vicoden" "[didn't] do much." *Id.*

In August, 1999, Dr. Levin again saw the Plaintiff and found that the Plaintiff still suffered from left lower back pain and numbness and pain in his right leg. R. 162. He also had sciatic notch tenderness and a straight leg raise at 60 degrees produced right thigh pain. *Id.* In September of 1999, Dr. Levin saw the Claimant again and reviewed a recent MRI.

He found that there was either a postoperative change with enhancing scar tissue or a recurrent L4-L5 disc herniation. R. 161. Dr. Levin did not believe the Claimant could work at that time. *Id.*

In May of 2000, Dr. Levin found that the Claimant had reached maximum medical improvement. R. 152-53. The Plaintiff had pain in his back and right leg, and numbness in his right leg. R. 153. The doctor imposed a lifting restriction of 50 pounds maximum, R. 152, and recommended that the Claimant should use over-the-counter medication, such as Aleve, Nuprin or Advil, for his treatment. R. 153. Dr. Levin concluded that the Claimant could work at the medium/heavy level. R. 152.

### 2. Dr. Jit Kim Lim - Neurological Surgeon

In September of 1999, Claimant also saw Dr. Jit Kim Lim. R. 200-01. Dr. Kim found that Claimant was "a young male in some distress." R. 200. He noted that Plaintiff walked with a antalgic gait, as well as a stooping posterior, due to pain in his lower back. *Id.* He detected spasms in the muscles in Claimant's lower back. *Id.* He found that Claimant's range of movement was limited and recommended that he have another operation. R. 201.

### 3. Dr. Spiros Stamelos - Orthopedic Doctor - Treating Physician

On June 15, 2000, Dr. Spiros Stamelos examined Plaintiff and found that he had a history of back surgery and post laminectomy syndrome. R. 202-03. Dr. Stamelos determined that Claimant could perform light and sedentary work, but reasoned that such work would not be available to Plaintiff, because of his education and language ability. R.

6

202. Also, the doctor thought that Plaintiff's inability to speak English made him afraid, so that he probably held back during his functional evaluation. R. 202.

In August 2000, two months after Plaintiff's insured status expired, Dr. Stamelos indicated that he had last examined Plaintiff on June 15, 2000, and that Plaintiff had lower back pain, neck pain, left arm numbness, right leg numbness, symmetrical and equal deep tendon reflexes, and an unassisted gait. R. 182. Dr. Stamelos stated that Plaintiff was not a good candidate to return to work. R. 183.

### 4.    Dr. Ibrahim S. Sadek - Consultative Exam

In September of 2000, Ibrahim S. Sadek, M.D., a consultative examiner for DDS, evaluated Plaintiff's physical condition. R. 184-86. Dr. Sadek found that the Plaintiff had normal strength in his arms and legs, and had normal ranges of motion in his arms, legs, and hips. R. 185. He found that Plaintiff suffered from low back pain with radiation to the right leg. Dr. Sadek described Claimant's gait as "slow and cautious." R. 186. He recommended further physical therapy and possibly work hardening. He found that Claimant could sit and stand and walk short distances (approximately 100 feet), and handle small objects. *Id.*

### 5.    Dr. Virgilio Pilapil - State Reviewing Physician

In November of 2000, Dr. Virgilio Pilapil, a state agency reviewing physician, reviewed Plaintiff's medical records, and completed a residual functional capacity assessment. R. 189-96. Dr. Pilapil did not examine Claimant. Dr. Pilapil concluded that Claimant could perform medium work. R. 190. The doctor also concluded that Claimant

could frequently perform all of the postural movements except kneeling only occasionally. R. 191. Dr. Pilapil also signed a Disability Determination and Transmittal form, indicating that Plaintiff's impairments did not meet or equal the criteria of any of the Listings. R. 60.

### 6.    HealthSouth Rehabilitation Center of Central DuPage - RFC Evaluation

In May of 2000, Paul Plinske and Lynne Fuglsang-Haram evaluated Plaintiff's functional capacity for HealthSouth Rehabilitation Center of Central DuPage. R. 204-211. The evaluators found that Plaintiff was capable of returning to light work and that he could lift twenty pounds from floor level and carry twenty pounds. R. 204, 210. The evaluators determined that Plaintiff was capable of standing for three to four hours per day, and sit for seven to eight hours per day. R. 212. The evaluators also believed that Plaintiff had not shown maximum effort on his test. R. 204, 209.

### 7.    Italian Doctor

Claimant returned to Italy and was treated by an unknown Italian doctor. R. 42-43, 214. Under this doctor's care, Claimant underwent an x-ray, R. 214, and his findings were read into evidence at the ALJ hearing. R. 43-44. The doctor noted initial radiological evidence of arthritis of the spine. R. 43.

## D.    THE ALJ'S DECISION

Plaintiff was denied benefits by the ALJ in a decision dated December 19, 2003. R. 10-18. The ALJ made a determination based on the five step sequential analysis. *See* 20 C.F.R. § 416.1520. At step one, the ALJ found that Plaintiff had not performed substantial

gainful activity ("SGA") since November 12, 1998. R. 15. An evaluation of the second and third steps led to the finding that although the Plaintiff's condition qualified as "severe," it failed to meet or equal the required level of severity set forth for any impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. R. 15.

Before proceeding to the Step 4 analysis, the ALJ determined that Claimant had a residual functional capacity ("RFC") for light work, or a maximum remaining ability to do sustained physical and mental work activities in an ordinary work setting on a regular and continuing basis, or 8 hours a day, 5 days a week, despite his limitations due to the impairments. R. 16. This RFC also included a restriction that Claimant be allowed alternate sitting and standing at will. Light work is work which may require maximum lifting of twenty pounds and frequent lifting of ten pounds. *Id.* The ALJ considered the administrative findings of fact made by the State Agency medical physicians in determining the RFC. *Id.* Although the ALJ acknowledged that these medical sources assessed the Claimant's RFC at "medium" work, the ALJ decided to reduce the RFC to "light" because of "other additional evidence which shows somewhat greater limitations as reflected in his residual functional capacity." *Id.*

The fourth step is whether the Claimant's RFC allows him to perform any past relevant work. 20 C.F.R. § 404.1520(a). The ALJ determined that Claimant could not perform past relevant heavy work, R. 16, therefore the burden shifted to the Commissioner to show that other work exists in significant numbers in the economy.

Under Step 5, the ALJ determined that the Commissioner had met its burden of showing that a significant amount of work exists in the community that the Claimant would be capable of performing. R. 17. In reaching this conclusion, the ALJ relied upon the testimony of the VE who was asked to identify occupations a hypothetical person with the Claimant's RFC and vocational profile could perform. *Id.* The VE testified that there were approximately 37,250 jobs in the Chicago region alone. *Id.* Therefore, the ALJ found that Claimant was not under a "disability", as defined in the Act, at any time since November 12, 1998. *Id.*

## II. LEGAL STANDARDS

### A. STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1993).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support

10

a conclusion." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A mere scintilla of evidence is not enough. *Id.* Even if there is adequate evidence in the record to support the decision, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). The ALJ must consider all relevant evidence, and may not select and discuss only that evidence which favors his or her ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ's analysis must be articulated at some minimal level and must state the reasons for accepting or rejecting "entire lines of evidence." *Id.* If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it can not stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), but it does not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz*, 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Id.*; *Nelson*, 131 F.3d at 1234. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

11

## B.   DISABILITY STANDARD

Disability insurance benefits are available to claimants who can establish "disability" under the terms of the Social Security Act. *Brewer v. Carter*, 103 F.3d 1384, 1390 (7th Cir. 1997). An individual is disabled if that individual has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, a disabled individual is eligible for DIB only if that individual is under a disability. *Id.* § 423(a). An individual is under a disability if she is unable to do her previous work and can not, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. *Id.* § 423(d)(2)(A).

The Commissioner uses a five-step sequential process in order to determine if an individual is disabled. 20 C.F.R. § 404.1520(a). The sequential evaluation ends if, at any step of the process, the ALJ finds that the claimant is not disabled. *Id.* The ALJ must inquire under Step 1 whether the claimant is working in any substantial gainful activity. If so, the inquiry ends and the claimant is denied benefits. If not, the ALJ proceeds to Step 2, where he determines whether the claimant's impairment is severe. If so, in Step 3, the ALJ asks whether the impairment meets or equals a listed impairment in 20 C.F.R.,Part 404, Subpart P, Appendix 1. If the finding at Step 1 is negative and affirmative at Steps 2 and 3, the claimant will be deemed "disabled" without further inquiry. *Barnhart v. Thomas*, 540 U.S.

20, 24-25 (2003). However, if Step 3 is negative, that is, the impairment is severe but does not meet a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1, then the inquiry continues. Under Step Four, the ALJ must ask whether the claimant is able to perform her past relevant work. If not, under Step 5, the ALJ must determine whether the claimant's age, education, and past relevant work experience in reference to her residual functional capacity, enable her to do other work. *Id.* § 404.1520(a)(4)(i)-(v).

In order to determine whether the claimant can perform any past relevant work (Step 4), the ALJ assesses the claimant's residual functional capacity. *Id*. § 404.1520(e). The RFC is defined as the most an individual can do after considering the effects of physical and mental limitations that affect her ability to perform work-related activities. *Id.* § 404.1545. The burden of proof is on the claimant through Step 4; the burden shifts to the Commissioner only at Step 5. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). At Step 5 of the disability analysis, the Commissioner has the burden of proving that Plaintiff has the ability to engage in other work existing in significant numbers in the national economy. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

### III. DISCUSSION

The issues presented are: 1) whether the ALJ erred in failing to find that Claimant met one of several impairment listings during the Step 3 analysis; 2) whether the ALJ erred in determining the Claimant's RFC was "light" work; and 3) whether the ALJ erred in determining that the Claimant was not a credible witness.

## A. THE ALJ'S STEP 3 DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE

A Step 3 finding requires the ALJ to determine whether a claimant's limitations meet or equal a listed disability found within 20 C.F.R., Part 404, Subpart P, Appendix 1 ("the Listings"). At this step, the burden of proof rests with the claimant, who must show that his impairments meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity. *Young*, 957 F.2d at 389.

At the hearing before the ALJ, the Claimant's counsel did not assert that Claimant's condition met a Listing. Claimant now contends that the ALJ erred in reaching the conclusion that Claimant does not have an impairment that meets or equals the severity criteria of any impairment in the Listings. Mot. 14-17. Specifically, Claimant argues that the ALJ reached a conclusion without any reasoned analysis, without citing to specific Listings in his opinion, and without considering evidence offered by the treating physicians. Moreover, Claimant contends that it is arguable that the evidence in the record supports a finding that Claimant meets Listing 1.04A or C. Listing 1.04 states in relevant part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or

------------

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.

The ALJ's Step 3 analysis states:

The claimant does not have an impairment which meets or equals the severity criteria of any impairment in the Listings. The Social Security Administration's non-examining experts reviewed the evidence of record and opined that the claimant's condition did not medically equal any Listing.

R. 15.

This case is controlled by the Seventh Circuit's reasoning in *Scheck v. Barnhart*, 357 F.3d 697, 700-701 (7th Cir. 2004). In *Scheck*, the court held that an ALJ's reliance on the stage agency physician's determination was factually sufficient and constituted a sufficient articulation to determine the Step 3 issue, where the Claimant's treating physician did not address the Listings, where the Claimant did not raise the issue before the ALJ, and where there was no evidence to support the position that Claimant met or equaled the listing. *See also, Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988) ("It was therefore unnecessary for the ALJ to specifically articulate his reasons for accepting the consulting physicians' opinions on the question of medical equivalency.")

Here, Claimant has not demonstrated all of the required Listing level findings. Claimant did not demonstrate motor loss associated with muscle atrophy, R. 185, or muscle weakness, R. 162, 165, 168, 185, and he did not have reflex loss, R. 162, 167, 182, 188.

15

Likewise, he demonstrated a normal, unassisted gait. R. 165, 182. Thus, substantial evidence supports the finding that Claimant did not meet the musculoskeletal Listing.

## B. THE ALJ'S STEP-FOUR DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE

Claimaint's second argument is that the ALJ failed to fully analyze the evidence or articulate a rationale for his RFC classification of light work. In cases of severe impairment, the ALJ's analysis at Step 4 typically involves an evaluation of the claimant's residual functional capacity to perform the past relevant employment. *See* 20 C.F.R. § 404.1520(e). The RFC determination should take into account all relevant evidence, including objective medical evidence, treatment, physician's opinions and observations, as well as the claimant's own statements about his limitations. 20 C.F.R. § 404.1545. The ALJ need not accept only physician's opinions, but rather the ALJ should look at the entire record in formulating his RFC finding. *Diaz v. Charter*, 55 F.3d 300, 306 n.2 (7th Cir. 2001). If there is conflicting medical evidence, the ALJ must resolve the conflict. *Id.*

The ALJ determined that Claimant had an RFC for light work with the additional restriction that he must be allowed to alternate sitting and standing at will. R. 16. The ALJ reached this conclusion by noting that the State Agency medical physicians had assessed Claimant's RFC at medium work, but then lowered this to light work because of "additional evidence which shows somewhat greater limitations." *Id.*

Claimant argues that the ALJ merely adopted the RFC determination made by the DDS without a full analysis of the evidence and presenting a logical and reasoned bridge to

16

his conclusions. Claimant argues that the ALJ adopted the DDS determination of "medium work", R. 16, 190, and then arbitrarily reduced this to "light work" because of "additional evidence" that he did not explain. Second, Claimant argues that the ALJ did not reconcile a "fundamental conflict" in medical evidence between Claimant's treating surgeon and treating physician. While Claimant's treating surgeon, Dr. Levin, determined that Claimant could lift up to 50 pounds and work at a "medium/heavy" level, R. 152, the Claimant's treating doctor, Dr. Stamelos, determined that because of scarring and pain in the L4-5 vertebrae, Claimant was not a good candidate to return to work. R. 202-03. Also, Claimant argues that the ALJ failed to resolve the conflict between Dr. Levin's RFC and the RFC produced by HealthSouth, which indicated that Claimant could return to work at the "light" level. R.205.

Again, an ALJ's opinion is important because it tells reviewing courts whether the ALJ has considered all the evidence, as the statute requires him to do. *See Brindisi*, 315 F.3d at 786. An ALJ is not required to "evaluate in writing every piece of testimony and evidence submitted." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotations omitted). Instead, because the demands on ALJs are so onerous, a reviewing court can only require "a minimal level of articulation by the ALJ as to his assessment of the evidence ... in cases in which considerable evidence is presented by the claimant." *Id.* Even if the ALJ ultimately renders a "sketchy opinion", it will be sufficient if it assures the reviewing court that the ALJ considered the important evidence and enables it to trace the ALJ's reasoning.

17

*Brindisi,* 315 F.3d at 787; *Stephens,* 766 F.2d at 287.

In this case, the ALJ's Step 4 analysis was sufficient. In making his decision, the ALJ analyzed the findings and opinions of the treating and examining physicians pertaining to Claimant's impairments and abilities. 20 C.F.R. § 404.1527(d). Here, the record shows that Claimant was treated by Dr. Levin for a back condition beginning in November 1998, R. 139-40, and underwent back surgery by Dr. Levin in March 1999. R. 145. In May 2000, Dr. Levin opined that Claimant retained the capacity to perform medium exertion work, with a lifting restriction of 50 pounds. R. 152. Dr. Levin also indicated that Claimant was able to sit for one to one and a half hours and stand for one and a half or two hours. R. 153. Dr. Levin based his opinion in part on a functional capacity evaluation performed in May 2000. R. 204-11.

Dr. Stamelos stated that Claimant retained the physical capacity to perform sedentary or light work. R. 202. The ALJ expressly identified these reports in evaluating Claimant's residual functional capacity. R. 15. These functional capacity assessments support the ALJ's finding.

Claimant asserts that the ALJ should have given more weight to the opinions of Dr. Stamelos that Plaintiff was unable to work. R. 183, 188, 202. As the ALJ explained (R. 15), however, the disability opinions of Dr. Stamelos contrasted sharply with that of Dr. Levin, Claimant's long-term treating back surgeon, who said that Plaintiff could return to medium work. R. 152. Moreover, Dr. Stamelos appears to base his disability opinion on vocational

18

considerations that were outside the area of his expertise as a physician. Dr. Stamelos states that while Plaintiff could perform light and sedentary work, such work would not be available to him because of his education and language ability. R. 202. To the contrary, the vocational expert considered Plaintiff's education and language ability, and he was able to identify tens of thousands of jobs that accommodated him. R. 53-55. Thus, the opinion of Dr. Stamelos was not entitled to much weight, because it was based on vocational considerations outside his area of expertise. *See Schmidt v. Apfel,* 201 F.3d 970, 973 (7th Cir. 2000) ("The ALJ is under no duty to respect expert opinions that are given outside a witness' field of expertise."); *Turley v. Sullivan,* 939 F.2d 524, 527 (8th Cir. 1991) (holding that a treating physician's opinion that was based on vocational factors was not entitled to deference).

## C. THE ALJ'S CREDIBILITY DETERMINATION WAS NOT PATENTLY WRONG.

Claimant's last major argument is that the ALJ wrongly concluded that Claimant was not a credible witness. First, Claimant argues that the ALJ wrongly ignored the medical findings of Dr. Stamelos, which suggest that the Claimant's symptoms were more severe than could be shown by objective medical evidence alone. Second, Claimant argues that the fact that the Claimant used only over the counter medication for pain was insufficient to find him not credible.

The ALJ's credibility finding is entitled to substantial deference and will not be disturbed unless patently wrong. *Diaz,* 55 F.3d at 308. Because the ALJ is in the best

position to observe witnesses, a reviewing court should not disturb the ALJ's credibility determinations as long as there is some support for the determination in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1178-79 (7th Cir. 2001).

In this case, the ALJ found that Claimant was not a credible witness. R. 16. The ALJ based his credibility determination on the fact that Claimant's complaints of back pain and alleged limitations (like being unable to do most daily activities) were inconsistent with the objective medical record. *Id.* The ALJ acknowledged that it is not unusual for symptoms to suggest a greater severity than can be shown by objective medical evidence, but determined that the inconsistencies between Claimant's testimony and the medical evidence went beyond this explanation. *Id.* Further, the ALJ determined that the Claimant's testimony that he sometimes needs to lie down for several hours when the pain is at its worst was inconsistent with his admission that he does not take any prescription medication for the pain. *Id.*

The ALJ's credibility determination is not patently wrong. Although Claimant argues that the medical records support his complaints of pain, the medical records also support the ALJ's conclusion that Claimant's complaints were exaggerated. For example, Claimant's treating back surgeon determined that he could perform medium work, R. 152, and other functional capacity evaluators also thought that he could perform light work. R. 202, 204. Further, the functional examination showed inconsistencies which suggested that Claimant used less than full effort. R. 204, 209.

The ALJ properly reasoned that the use of over-the-counter pain medication reduced the credibility of Claimant's allegations of disabling symptoms. R. 16. The ALJ is instructed to consider the dosage, effectiveness, and side effects of medications. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). In this case, the ALJ carefully inquired into Plaintiff's use of Tylenol and other over-the-counter medications for pain. R. 41-42. Based on this evidence, the ALJ could reasonably conclude that Plaintiff's subjective experience of pain was not so severe as to render him disabled from light work. *See Donahue*, 279 F.3d at 444 (affirming an ALJ's credibility determination which was based in part on his reasoning that the Claimant's relief of pain with over-the-counter pain medication showed that he was not disabled by pain). Therefore, the ALJ's credibility determination was not patently wrong.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Plaintiff's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted, and the decision of the Commissioner to deny Plaintiff's application for Disability Insurance Benefits is affirmed.

SO ORDERED THIS 8th DAY OF APRIL, 2005.

_Morton Denlow_

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Ashley S. Rose
Law Offices of Ashley S. Rose
799 Roosevelt Road
Building 6, Suite 104
Glen Ellyn, IL 60137

Counsel for Plaintiff

Catherine A. Seagle
Special Assistant
United States Attorney
200 West Adams
30th Floor
Chicago, IL 60606

Counsel for Defendant